UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE ARREST OF )
JORGE BARROS ) Case No.: 17-MJ-6388-MPK
)
)

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Marc Powell, Task Force Officer ("TFO"), Drug Enforcement Administration ("DEA"), United States Department of Justice, being duly sworn, state under oath as follows:

**A. Introduction**

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to sign a criminal complaint.

2. I am a Massachusetts State Police ("MSP") Trooper and have been so since my graduation from the State Police Academy in New Braintree, Massachusetts, in April of 2005. I am currently assigned to the Cape and Islands District Attorney's Office/Cape Cod Narcotics Task Force, where I am also a full-time Task Force Officer ("TFO") at the Drug Enforcement Agency ("DEA")/Cape Cod Task Force. Prior to my current assignment, I was a Trooper in the South Yarmouth, Dartmouth, and Bourne Barracks.

3. I have been in the Detective Unit for approximately 8 years. I have assisted, initiated, and/or participated in numerous narcotics investigations that have led to arrests and convictions for violation of Massachusetts drug laws and seizure of drugs, firearms, and assets. I have received training from the Massachusetts State Police in criminal investigations, including narcotics investigations. I have also attended training conducted by the New England Narcotics Enforcement Officers Association. I have also received training at several seminars for homicide

investigation and other serious and violent crimes. In the course of my police career, I have participated in numerous investigations involving homicide, narcotics, sexual assault, child abuse, computer related crimes, and other felony investigations. I have participated in numerous search warrant executions for these investigations.

4.     Since becoming a TFO with the DEA, I have conducted numerous investigations concerning unlawful drug possession, importation and distribution in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 952, 960 and 963, as well as the unlawful possession and use of firearms in furtherance of drug trafficking and crimes of violence in violation of Title 18, United States Code, Sections 924 (c), 1951, and 1959. I have extensive experience reviewing intercepted and recorded conversations between target subjects, amongst others. I also have participated in physical surveillance, the introduction of undercover agents, the execution of search warrants, debriefings of defendants, informants and witnesses, and the review of telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs, including heroin, fentanyl and cocaine, are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the drugs themselves, and I believe that I can visually identify substances – from their look and packaging – that I believe to be narcotics, either heroin, fentanyl, cocaine, marijuana or oxycodone pills.

5.     The facts and information contained in this affidavit are based on my personal knowledge as well as the observations of other law enforcement agents, cooperating defendants, and officers involved in this investigation. All observations that were not personally made by me were related to me by the person who made the observations. This affidavit is not intended to include each and every fact and matter known to the government pertaining to this investigation,

but rather only facts necessary for the establishment of probable cause for the arrest of Jorge BARROS a/k/a Joey of Central Falls, Rhode Island for possession of a mixture and substance containing a detectable amount of fentanyl with the intent to distribute in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and conspiracy to distribute and possess with intent to distribute 40 grams or more of fentanyl, in violation of Title 21, United States Code, Section 846.

### B. Interview with Cooperating Defendant

6.  On September 26, 2017, I, together with others, interviewed Cooperating Defendant 1 ("CD-1"). CD-1 has been charged in federal court in the District of Massachusetts with conspiracy to distribute fentanyl, and CD-1 is currently cooperating with investigators pursuant to a signed plea and cooperation agreement. CD-1 is cooperating with investigators in the hope of obtaining leniency from the district court at sentencing on his federal charges. I believe that the information that CD-1 provided to me was reliable based on the recorded telephones that I have listened to between CD-1 and BARROS, prior telephone contact between CD-1 and BARROS, and the subsequent seizure of fentanyl from BARROS, as outlined below.

7.  In the interview, CD-1 told investigators that after CD-1's previous drug supplier, Alex Fraga (charged in federal court at 17-CR-10320-NMG) was arrested in August 2017, CD-1 began receiving fentanyl[1] for personal use and for further distribution on to others from a male he knew to be named "Joey." CD-1 described Joey as a black male from Rhode Island with dreadlocks. CD-1 stated that in his three meetings with Joey, he collected a total of

---

[1] Although the narcotics at issue here have been generally referred to by cooperators and users as "heroin," the narcotics actually contained a detectable amount of fentanyl, and as such, will be referred to as fentanyl in this criminal complaint.

3

approximately 45 to 50 grams of fentanyl that he would use and/or distribute on to others. CD-1 explained that Joey typically "cuffed" the narcotics to CD-1, and that CD-1 would then pay Joey later. Cuffing, I know from my training and experience, refers to narcotics that are provided to a user or dealer at no charge, with the expectation that the user or dealer will pay for the narcotics later after obtaining money.

**C.   Arrest of BARROS on November 13, 2017**

8.      On November 9, 2017, at the instruction and under the supervision of agents, CD-1 placed a telephone call to the person he described as "Joey." The phone number that CD-1 dialed was 339-221-1774. I have reviewed telephone toll records between CD-1's telephones and 339-221-1774, and I observed telephone contact between CD-1 and Joey's telephone number dating back to September 2017. The below-described telephone calls were recorded and I was present when all of these calls were made.

9.      In this first telephone call, CD-1 asked "Joey" if he was "going to be around today," asking, I believe, if Joey would travel to Cape Cod to deliver narcotics to CD-1. Joey stated that he was "going to try and pick something up," meaning, I believe, that he was going to attempt to obtain narcotics from his supplier. Joey then asked for his "bread" (money) that CD-1 owed him, and CD-1 replied that he did not have the money, but that he had people that wanted to "kick in" for additional drugs, and CD-1 was hoping to collect a few thousand dollars (a "couple grand") from them in order to obtain 40 grams of fentanyl ("double up" from his regular supply of 20 grams). Joey responded that he was going to "pick it up today," referring to his supply of narcotics, and he told CD-1 to "get money together" as he really needed "some bread right now."

10.     Joey then told CD-1 that CD-1 still owed him $2,000 ("two bands") from prior drug deals and that CD-1 needed to provide Joey with the money. Joey could not just keep

4

"giving [him] and giving [him] the same thing" without CD-1 paying back the money. CD-1 said he would work on obtaining money for Joey. Joey replied that if CD-1 obtained money, Joey would have additional narcotics for him "soon." In a second phone call made that afternoon, Joey said he could not deliver the narcotics to CD-1 that day, and so Joey and CD-1 made plans with Joey to meet on Monday (November 13, 2017). CD-1 told Joey that he would have $2,300 for Joey ("23") which would be for narcotics for CD-1's "buddies" and him.

11.  On Monday, November 13, 2017, CD-1 placed a number of phone calls to Joey to arrange the narcotics transaction described above. In the first call, CD-1 said that he would provide Joey with $2,500 for "the 40," referring to 40 grams of fentanyl. Joey answered in the affirmative, affirming the logistics of the transaction. CD-1 and Joey then made plans to meet around 2:00 p.m. that afternoon in either Hyannis or Yarmouth. In a second call that afternoon, the time of the meeting was changed to 4:00 p.m., with CD-1 confirming with Joey that he would provide Joey with $2,500 in exchange for 40 grams of fentanyl, with $500 being put towards payment of CD-1's outstanding bill of $2,000.

12.  Subsequent calls between Joey and CD-1 arranged for the deal to take place at the Stop and Shop Plaza in Harwich near the Olympia Sports store. At approximately 4:42 p.m., Joey called CD-1 and asked him where he was. Three minutes later, investigators conducting surveillance saw a red Toyota Avalon pulling into the parking lot near Olympia Sports stores. CD-1 walked out of Olympia Sports, and the red Avalon flashed its lights at CD-1. At that point, investigators stopped the red Avalon and removed the occupant (a black male with dreadlocks) from the vehicle. "Joey" identified himself as George BARROS, and CD-1 then identified BARROS as "Joey." BARROS was searched and a large object was felt behind BARROS' left knee. The large object, which was a plastic baggie inside a second plastic baggie, contained a

white powder. Investigators also found approximately $4,000 on BARROS' person (inside his right pocket). BARROS claimed that this money was an allowance that he received from his father who worked in a bank. BARROS was then read his *Miranda* rights and he asked for his lawyer.

13. Investigators later field-tested the white powder, which had a gross weight of 38.7 grams and tested positive for fentanyl. In addition to the narcotics and cash, investigators seized three cellular telephones (one iPhone and two "flip" phones). All three cellular telephones were inside the car – two on the passenger seat and one in the cup holder of the center console.

14. In sum, based on my training and experience, I believe that BARROS possessed the nearly 40 grams of fentanyl with the intent to distribute said narcotics, in violation of Title 18, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and he also conspired to distribute 40 grams or more of fentanyl with CD-1 and others, in violation of Title 21, United States Code, Section 846.

MARC POWELL
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me this the 15th day of November 2017

HON. M. PAGE KELLEY
United States Magistrate Judge
District of Massachusetts